PEDEN v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

1. **Railroads: RIGHT-OF-WAY DEED: COVENANT RUNNING WITH LAND: BREACH: DAMAGES: WHAT LAND CONSIDERED.** Plaintiff's grantor deeded to defendant a right of way through an eighty-acre tract of land. The deed provided as follows: "The water on the southeast side of the road to be made to run on same side of road instead of through cattle-guards." The grantor in the deed owned not only the eighty acres, but other adjoining land, and he afterwards conveyed one hundred and thirty-five acres of it, including twenty-nine acres of the eighty acres, to plaintiff. The covenant above named ran with the land. (See same case, 73 Iowa, 328.) *Held* that for a breach of it, causing the water to flow across the right of way upon plaintiff's land, if he was entitled to recover at all, his right to do so extended to the one hundred and thirty-five acres, and was not limited to the injury to the twenty-nine acres. (See opinion for citations.)

2. ———: **OVERFLOWING LANDS: DAMAGES: EVIDENCE.** In an action for overflowing plaintiff's land, witnesses were permitted to state how much more, if any, the land of the plaintiff would have been worth between certain named dates if the water had not been made to run over it. The petition alleged that plaintiff sustained damages by reason of the overflow of his lands during the time named by the witnesses, and specified certain injuries, all in the nature of damage to real estate. *Held* that the testimony was neither incompetent nor immaterial, and that its admission was not erroneous on the ground that it implied the adoption of a wrong measure of damages. (See opinion for citations.)

3. ———: ———: ———: **STATUTE OF LIMITATIONS: KIND OF CULVERT.** A right of action for flowing water upon lands through a temporary culvert is not barred in ten years from the structure of the culvert, but it begins to run from the date of the actual injury sustained; and the evidence in this case (see opinion) justified the jury in finding that the culverts in question were but temporary structures.

4. ——— : RIGHT-OF-WAY DEED : COVENANT AS TO WATER : CONSTRUC-
TION. A covenant by a railroad company in a right-of-way deed,
that the water on the southeast side of the road should be made
to run on the same side of the road, "and not through the cattle-
guards," which were then the only openings, is broken by causing
the water to flow to the other side of the road through a culvert
or bridge afterwards constructed.

5. Evidence : RECORDS IN OTHER CASES : ADMISSIONS OF AGENTS.
Records in other cases, in which the defendant herein was defend-
ant, were properly admitted to show the admission by it of facts
material to this case, notwithstanding the admissions were made
by defendant's agents ; for, in the absence of a contrary showing,
it must be presumed that the admissions were made by authority,
and were, in effect, the admissions of defendant. (Compare *Ayres
v. Insurance Co.*, 17 Iowa, 187.)

*Appeal from Davis District Court.*—HON. H. C.
TRAVERSE, Judge.

FILED, JUNE 5, 1889.

ACTION to recover damages for the alleged breach
of the covenant of a right-of-way deed. There was a
trial by jury, and a verdict and judgment for plaintiff.
The defendant appeals.

*Cummins & Wright,* for appellant.

*Payne & Eichelberger,* for appellee.

ROBINSON, J.—On the fifteenth day of March, 1871,
Joseph Peden executed to the Chicago and South-
western Railway Company a deed for a strip of land
one hundred feet wide, through an eighty-acre tract of
land, for railway purposes. The deed contained the
following provision : "The water on the southeast
side of the road to be made to run on same side of road,
instead of through cattle-guards." At that time
Joseph Peden owned the tract of land described in the
deed, and also other land. In the year 1878 he con-
veyed one hundred and thirty-five acres of the land he
so owned, comprising the land in controversy in this
suit, to the plaintiff, James M. Peden. It appears that
the railway was constructed over the strip of land con-
veyed by the right-of-way deed in the year 1870.

When that deed was given there were two cattle-guards on the land then owned by the grantor, but no culvert. About the year 1874 or 1875 a wooden culvert, six feet wide and about two feet deep, was constructed under the railway, on the land in controversy. The surface water, if unobstructed, would flow from the land southeast of the culvert to that north and northwest of it. In the year 1884 the location of the railway in the vicinity of the culvert was changed, and a new roadbed and track were constructed. In July of that year a stone bridge, sixteen feet wide and seven feet high, was built under the new track, some thirty or forty feet southwest of the culvert. The plaintiff claims that the openings under the railway track made prior to the construction of the stone bridge were mere temporary expedients; that defendant became the owner of the railway prior to 1878, and is chargeable with all the obligations imposed by the provision of the right-of-way deed hereinbefore set out; and that it is liable for all damages which plaintiff has sustained by reason of the breach of that provision since the first of August, 1881. He claims damages by reason of the overflow and washing of his land by water which came from the higher ground southeast of the railway from that date to the time when the stone bridge was built, and for injury to his land caused by the erection of the bridge as a permanent structure.

I. The character and effect of the covenant in the right-of-way deed were considered by this court on a former appeal. See 73 Iowa, 328. The **1. RAILROADS: right-of-way deed: covenant running with land: breach: damages: what land considered.** plaintiff now owns but twenty-nine acres of the eighty-acre tract described in the right-of-way deed. It is insisted that, if appellee be entitled to recover, the amount of his recovery must be restricted to the damage to the twenty-nine acres; that, since the covenant runs with the land, its effect must be limited to the tract of which the strip conveyed formed a part, and which was described in the deed. It was said on the former appeal that the covenant concerns "both the land conveyed by the deed and that retained by Peden." It

has been frequently determined that where a right of way through parcels of real estate treated as an entirety —as, for example, tracts together constituting but a single farm—is sought to be taken by statutory proceedings, the land-owner's right of recovery is not limited to the subdivision through which the right of way is to pass, but extends to all the tracts as a whole. *Dudley v. Railway Co.*, 77 Iowa, 408; *Cox v. Railway Co.*, 77 Iowa, 20; *Ham v. Railway Co.*, 61 Iowa, 718, and cases therein cited. Strictly speaking, the land described in the right-of-way deed was the strip one hundred feet in width actually conveyed, and the government subdivision through which it passed was specified for the purpose of making the description more definite. There is no ground for believing that Joseph Peden and his grantee, the railway company, designed to limit the effect of the covenant to anything less than the entire farm from which the right of way was taken. That being true, if plaintiff is entitled to recover, his right extends to the one hundred and thirty-five acres conveyed to him by Joseph Peden, which he now owns.

II. Plaintiff was asked the following question: "State how much more, if any, the land of the plaintiff would have been worth from August 1, 1881, to the time the stone bridge was put in, if the water had been made to run on the southeast side of the track, instead of over your land." It was objected to by defendant as incompetent and immaterial; but the objection was overruled, and plaintiff answered: "I think it would be worth seven hundred dollars more, at the least calculation." A similar question was asked another witness, and an answer was permitted, over the objection of defendant that the question was "incompetent, immaterial, and not the proper measure of damages." The questions seem to have been designed to ascertain the depreciation in the value of the land during the time specified by reason of the failure of defendant to prevent the flow of water from the southeast to the northwest side of its

2. ——: overflowing lands: damages: evidence.

track. Appellant contends that they were improper, under the issues. The petition alleges that plaintiff sustained damages by reason of the overflow of his lands during the time named in the questions, and specifies injury to crops, and the washing of "trash" onto the meadow; but the injury alleged is all in the nature of damage to real estate. The answers called for by the questions were, therefore, neither incompetent nor immaterial. *Sullens v. Railway Co.*, 74 Iowa, 665; *Drake v. Railway Co.*, 63 Iowa, 310. The measure of recovery adopted was in accordance with the cases cited, and, under the evidence in the case, could not have been prejudicial to defendant.

III. The wooden culvert was constructed more than ten years before this action was commenced, and for that reason appellant insists that it is barred by the statute of limitations. But whether it is so or not depends upon the real character of the culvert. If it was designed, as claimed by appellee, to be only a temporary expedient, the action is not barred. When the railway was first constructed there were two cattle-guards on the land of Joseph Peden, but no culvert. Four or five years elapsed before one was put in. Some of the evidence tends to show that it was of a temporary character; that it was not built in the manner adopted for permanent culverts; that a ditch was dug on the southeast side of the railway, to carry off the water on that side, and that the culvert was not kept free for the passage of water. The jury found specially that it was temporary; and we cannot say that their finding is unsupported by the evidence.

IV. Appellant complains of rulings of the court in excluding evidence as to conversations in regard to the construction of a ditch north of the railway. As the construction of such a ditch was not in issue, the rulings in question were correct.

V. It is claimed by appellant that the recovery in this action must be limited to the damages caused by

*3. ——: ——: ——: statute of limitations: kind of culvert.*

Peden v. The Chicago, R. I. & P. Ry. Co.

**4. ——: right-of-way deed: covenant as to water: construction.** the flow of water through the cattle-guard, and that the construction of the culvert and stone bridge for the purpose of conducting the water from the southeast to the northwest side of the track was not a violation of the condition of the right-of-way deed. It is true that neither culvert nor bridge is mentioned in the deed; but it is clear that the purpose of the covenant was to require the railway company to prevent the flow of water under the track from the southeast. When the deed was made there was neither bridge nor culvert, nor does there appear to have been any intention to construct one. Hence, the cattle-guards, constituting the only openings under the track, were alone mentioned.

VI. Appellant complains of the admission of the records in two other cases, in each of which it was a party defendant. These records were introduced to show that defendant had admitted in those cases that it was the owner of the railway in question after the construction of the stone bridge, and that it had operated it continuously since the year 1873. It is objected by appellant that the admissions in those cases were made by agents of defendant, and cannot be used in any other case. But we must presume, until the contrary appears, that the agents were duly authorized to make the admissions in those cases, and that they were, in effect, the admissions of their principals; and as such they were admissible in other cases. *Ayres v. Insurance Co.*, 17 Iowa, 187.

**5. EVIDENCE: records in other cases: admissions of agents.**

VII. We have discussed the most important of the questions presented by appellant. The others have been examined with care, but no error prejudicial to appellant has been discovered. It is insisted that the verdict is not sustained by the evidence; but there is some evidence to sustain it, and we cannot disturb the judgment on that ground.      AFFIRMED.